## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LESTER FRIEDLANDER** | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:CV-04-1649** |
| | : | **(JUDGE VANASKIE)** |
| **ANN VENEMAN, Secretary, U.S.** | : | |
| **Department of Agriculture** | : | |
| **Defendant** | : | |
| | : | |

## MEMORANDUM

The parties have presented this breach of contract case to this Court for a final decision based upon a stipulated record.  Plaintiff Lester Friedlander, a veterinarian formerly employed by the Food Safety and Inspection Service (FSIS) of the United States Department of Agriculture (the "Agency"), claims that the Agency's refusal to award him any compensatory damages breached settlement agreements that resolved certain discrimination charges he filed while employed by the FSIS.  The Agency declined to award damages because it determined that Dr. Friedlander had not proven a causal relationship between his asserted damages and the matters presented in the employment discrimination complaints.  Having determined that the settlement agreements did not relieve Plaintiff of the obligation of proving that alleged damages were caused by discrete wrongful acts asserted in the discrimination complaints, and further finding that the evidence presented to the Agency did not establish the requisite causal relationship, this Court concludes that the Agency did not breach the contracts in question.

## I. **BACKGROUND**

_____Dr Friedlander was employed by the Agency in the FSIS from 1985 until April 29,

1995.  During the early part of his career, he was assigned to the Taylor Packing

Company, a very busy meat packing plant near Wyalusing, Pennsylvania.  (Joint Record,

Exhibit 10, Dkt. Entry 16-3, at 54.)[1]  During this period of time, Dr. Friedlander's workload

increased dramatically.  He was required to supervise more inspectors, train

veterinarians, and be present at the Taylor Packing plant at all hours of the day and night.

(Id.)  By letter dated June 20, 1995, Dr. Friedlander wrote that he "experienced major

depression, an adjustment disorder, and obsessive compulsive personality problems

manifested by . . . extreme stress during the last several years (prior to 08/28/92) of my

employment for USDA at Taylor Packing and continued past 08/28/92."  (Joint Record,

Exhibit 9, Dkt. Entry 16-3, at 9.)  In August of 1992, Plaintiff was transferred from Taylor

Packing to the "Wyalusing Mini-Circuit," which consisted of several smaller meat packing

plants. (Joint Record, Exhibit 10, Dkt. Entry 16-3, at 54.)

During Dr. Friedlander's tenure with the FSIS, he filed a number of Equal

Employment Opportunity ("EEO") complaints, charging discriminatory treatment on sundry

bases, including age, national origin, religion, and disability.  He also charged retaliation

---

[1] Materials in the Joint Record submitted by the parties will be cited by the exhibit number plus the docket entry number and page of the record in the court's electronic filing system where the evidence in question is located.

and reprisal.

One of the complaints, bearing Agency Complaint No. 930406, proceeded to a final Agency decision of no discrimination.  (Joint Record, Exhibit 6, Dkt. Entry 16-1, at 70.)  Dr. Friedlander appealed the Agency determination to the Equal Employment Opportunity Commission ("EEOC").  On September 18, 1996, the EEOC ruled that discriminatory treatment had not been proven.  (Id.)  Dr. Friedlander did not seek further review of this decision.

Four other EEO Complaints were filed by Dr. Friedlander from 1993 through 1995 – Agency Complaint Nos. 930623, 940324, 950206, 950313.[2]  These complaints were resolved by the settlement agreements that are at issue in this litigation.

The first resolution agreement at issue here was executed by the parties on August 4, 1994 (the "1994 Resolution Agreement"), and concerned the EEO charge bearing Agency Complaint No. 940324.  As set forth at page 9 of Plaintiff's initial Brief in support of his claims:

> The issues in Complaint No. 940324 are whether the Plaintiff was subjected
> to a pattern of harassment which included: (1) negative comments in plant
> reviews in December of 1993, (2) an investigation conducted from

---

[2] It should be noted that the EEO Complaints have not been made part of the record in this case.  Accordingly, the parties' representations as to the subject matters of the complaints, along with descriptions of the complaints found in the exhibits submitted to the Court, have been accepted as accurate accounts of the discrimination charges presented by Dr. Friedlander.

September of 1993 through February of 1994, (3) discussions with plant personnel about the aforementioned investigations, and (4) the related proposed disciplinary action.[3]

The 1994 Resolution Agreement (Joint Record, Exhibit 5, DKt. Entry 16-1 at 67-68),

contained the following provisions:

FSIS AGREES TO:

1.  With the approval of the Comptroller General or change in regulatory authority, make a lump sum payment in the amount of $2500.00 to Dr. Friedlander for compensatory damages incurred during the period October 1, 1993, to August 4, 1994.  The claim will be submitted to the Comptroller General with in fifteen days of receipt of Dr. Friedlander's claim as specified in employee item 4, below.

2.  Not contest the claim material submitted by Dr. Friedlander for compensatory damages.

3.  Within 60 days, recredit to Dr. Friedlander up to eighty hours of sick leave and 40 hours of annual leave used between the period October 1, 1993 and August 4, 1994.

4.  Within thirty days reissue the Agency's EEO policy statement to all employees in the Harrisburg, PA area.

DR. LESTER FRIEDLANDER AGREES TO:

1.  Appeal the issue concerning discipline to the Merit Systems Protection

---

[3] This description is consistent with that found in the Final Agency Decision of April 30, 2004, Exhibit 3 of the Joint Record, Dkt. Entry 16-1, at 51.  According to the Brief of Defendant, Dkt. Entry 18, at 10 n.15, the investigation alleged to be part of the harassment concerned allegations that plaintiff had failed to perform ante-mortem inspections on two cows, despite having signed a document indicating that the inspections had been performed.

Board.[4]

2.  Withdraw the formal EEO Complaint filed March 24, 1994 and . . . not to file any new complaint about the issues involved.

3.  Release, waive and withdraw any and all claims (complaints, grievances or appeals of any sort) against FSIS and its employees and officers (in their individual and official capacities) for any concerns involved in the March 24, 1994 EEO Complaint (with the exception of the suspension issue).

4.  Submit a claim within thirty days from signing this agreement stating the compensable harm he believes he suffered in respect to the issues being withdrawn, including a valuation of the harm, for submission to the Comptroller General.

(Id.)  The 1994 Resolution Agreement was expressed to be "a full, complete and final settlement of all the employment concerns currently raised in Dr. Friedlander's formal EEO Complaint (940324)."  (Id. at 67.)  Furthermore, it provided that Dr. Friedlander could request reinstatement of the underlying complaint "[i]f the terms of the agreement are not carried out (other than as a result of actions by Dr. Friedlander)," so long as he made the request for reinstatement within thirty days of the alleged failure to implement the agreement.  (Id. at 68.)  Finally, the 1994 Resolution Agreement provided that "[i]f the Comptroller General does not approve the payment of the compensatory damage claim, the complaint will be reinstated for further processing." (Id.)  It appears that the lump sum payment of $2,500 required by the 1994 Resolution Agreement was not made until

---

[4] The record before this Court does not indicate whether such an appeal was taken, and if so, the result of the appeal.

August of 1995.  (Brief of Defendant for Judgment at 5.)[5]

Before the Agency satisfied its obligations under the 1994 Resolution Agreement, Dr. Friedlander and the FSIS entered into another Resolution Agreement, this one bearing the date of April 21, 1995 (the "1995 Resolution Agreement").  (Joint Record, Exhibit 4, Dkt. Entry 16-1, at 64-65.)  Pursuant to this agreement, the FSIS agreed to pay Dr. Friedlander $32,000 "in consideration of back pay . . . ."  The FSIS also agreed "to pay proven compensatory damages in support of all formal complaints that exist as of the date of the signing of this agreement."  In addition, the FSIS was "to provide a statement to attest to the work conditions that existed prior to Dr. Friedlander's reassignment [from Taylor packing] (8/28/92) in support of his [workers] compensation] claim."  (Id. at 65.)  For his part, Dr. Friedlander agreed to withdraw EEO Complaint Nos. 950206 and 950313; "release, waive, and withdraw any and all claims" pertaining to his employment with FSIS; resign his employment with FSIS, effective April 29, 1995; and not reapply for employment with it.  (Id.)  As in the case of the 1994 Resolution Agreement, this contract granted Dr. Friedlander the right to request reinstatement of the underlying complaints by making a request to the Agency's Disputes Resolution Staff within thirty days of an alleged failure to implement the agreement.  (Id.)

---

[5] Dr. Friedlander has not denied receiving payment of $2,500 in connection with the 1994 Resolution Agreement.

At the time that the 1995 Resolution Agreement was executed, Dr. Friedlander was represented by Attorney Henry K. W. Woo.  By letter dated June 20, 1995, Attorney Woo sent to the Agency's Compensatory Damages Unit Dr. Friedlander's narrative account of damages along with documentation purporting to substantiate his claims. (Join Record, Exhibit 9, Dkt. Entry 16-3, at 7-23.)  By letter dated September 15, 1995, Attorney Woo submitted additional documentation pursuant to the 1995 Resolution Agreement.  (Id. at 24-47.)  In his letter, Atty. Woo stated that Dr. Friedlander sought an award of compensatory damages in the sum of $543,000.  (Id. at 24.)

The additional documentation accompanying Atty. Woo's September 15th letter included affidavits of Dr. Friedlander's children, his brother, Richard, and a letter report of a psychiatrist, Dr. Robert T. Latimer.  The affidavits of Dr. Friedlander's three children indicated that he had changed dramatically after he was required to leave the Taylor Packing Company.  (Id. at 26-28.)  Dr. Friedlander's brother addressed the impact of the long hours put in by Dr. Friedlander at the Taylor Packing plant.  (Id. at 29) Dr. Latimer, in his June 30, 1995 letter report, stated that Dr. Friedlander had expressed feelings of humiliation with respect to his transfer from Taylor Packing.  (Joint Record, Exhibit 11, Dkt. Entry 16-3, at 58.)  Dr. Latimer also referenced the very long hours that Dr. Friedlander worked while at Taylor Packing.  Dr. Latimer opined that Dr. Friedlander was "suffering a Major and Severe Depression related to his job difficulties."  (Id. at 59.)

The Agency commissioned an investigation of Dr. Friedlander's claim for compensatory damages.  The contractor retained by the Agency submitted a Report of Investigation on February 27, 1996.  (Joint Record, Exhibit 8, Dkt. Entry 16-1, at 85-100, Dkt. Entry 16-2, at  1-100, Dkt. Entry 16-3, at 1-5.)  In addition to the documentation submitted by Attorney Woo, the Report of Investigation included affidavits of Plaintiff's former supervisor and former subordinates, invoices and other evidence of expenses for health care services, income tax returns and statements of earnings, warning notices for non-payment of property taxes, bank notices of insufficient funds, and documentation pertaining to Dr. Friedlander's claim for workers' compensation.

In his claim for workers' compensation benefits, Dr. Friedlander set the onset date as August 29, 1992, asserting that he had not been depressed, anxious or unhappy until he began "experiencing problems at work due to overwork, harassment, poor staffing and the general working conditions . . . ."  (Id. at 58.)  The onset date coincides with his transfer from the Taylor Packing plant.  Dr. Friedlander asserted that he first realized his condition was attributable to his employment situation on April 1, 1993.  (Id. at 58.)

The documentation included in the February 27, 1996 Report of Investigation included the October 26, 1995 determination of the Department of Labor rejecting Dr. Friedlander's workers' compensation claim.  (Id. at 84-90.)  In a memorandum accompanying the denial of benefits, the Department of Labor claims examiner found that

Dr. Friedlander's "[g]eneral statements and allegations about harassment, working conditions, and stress are not sufficient to constitute 'facts' on which a claim can be based." (Id. at 90.)[6]

The issue of proven compensatory damages under the 1995 Resolution Agreement was still outstanding in May of 1996, when Dr. Friedlander filed an appeal with the EEOC.  Dr. Friedlander claimed that, in addition to Agency Complaint Nos. 950206 and 950313, explicitly mentioned in the 1995 Resolution Agreement, the Agency was obligated to award him proven compensatory damages for matters covered by three other EEO complaints: Nos. 930406, 930623, and 940324.[7]

On January 29, 1997, the EEOC issued its decision on Dr. Friedlander's claim that the Agency had breached the 1995 Resolution Agreement.  (Joint Record, Exhibit 6, Dkt. Entry 16-1, at 70-78.)  The EEOC first found that the Agency had breached the 1995 Resolution Agreement by failing to issue its determination with respect to the question of

---

[6] On May 15, 1996, the Department of Labor vacated its denial of workers' compensation, directing that Plaintiff be awarded benefits effective April 30, 2005.  (Joint Record, Exhibit 10, Dkt. Entry 16-3, at 52-55.)  This favorable decision relied heavily upon Dr. Latimer's opinion that Plaintiff was suffering from depression attributable to his work environment.  In particular, the Department of Labor mentioned the stressful conditions while Plaintiff was assigned to the Taylor Packing plant.  (Id. at 54.)  This favorable decision was rendered after the Report of Investigation had been submitted to the Agency in connection with the 1995 Resolution Agreement.

[7] Dr. Friedlander included Complaint No. 940324 even thought it appears to have been resolved by the 1994 Resolution Agreement.

9

proven compensatory damages by the time the appeal was filed by Dr. Friedlander in May of 1996.  (Id. at 73.)  The EEOC next addressed the question of "which complaints are encompassed by the Agreement's provision for compensatory damages."  (Id. at 73-74.)

The 1995 Resolution Agreement specifically mentioned Agency Complaint Nos. 950206 and 950313.  Thus, it was clear that the matters presented in those complaints were encompassed by the agreement to pay proven compensatory damages, and the Agency was directed to comply with the 1995 Resolution Agreement insofar as those complaints were concerned.

As to Agency Complaint No. 940324, the EEOC observed that "this complaint was also resolved by settlement in an agreement executed on August 4, 1994."  (Id. at 74.)  The EEOC went on to find that, because the 1994 Resolution Agreement obligated the Agency to not contest Dr. Friedlander's claim material for compensatory damages, "the agency's failure to pay the compensatory damages claimed in such material would constitute a breach of that settlement agreement; a breach which the [EEOC] may order remedied by specific enforcement."  (Id.)[8]

As to Agency Complaint No. 930406, which had proceeded on appeal to the

---

[8] There is no indication in the record that the EEOC was aware that, in August of 1995, the Agency had indeed paid Dr. Friedlander the lump sum amount of $2,500, set as compensatory damages in the 1994 Resolution Agreement.  In this regard, it should be noted that the Agency did not submit comments on this appeal.  (Id. at 72.)

EEOC and for which the Commission made a finding of no discrimination in September of 1996, the EEOC held that Dr. Friedlander had breached the 1995 Settlement Agreement by failing to withdraw the matter when it was pending before the EEOC.  The failure to withdraw the appeal precluded Dr. Friedlander "from establishing 'proven compensatory damages' with respect to the agency action's challenged in that complaint."  (Id.)

Finally, the EEOC instructed the Agency to determine whether Agency Complaint No. 930623 was still outstanding when the 1995 Resolution Agreement was signed.[9]  In this regard, the EEOC noted that it was unable to identify that particular complaint from the record before it.  (Id.)

The Order issued by the EEOC provided:

> The agency is hereby ORDERED to specifically implement the compensatory damages provisions of the settlement agreements dated August 4, 1994, and April 21, 1995, regarding Agency Complaint Nos. 940324, 950206 and 950313.  If no determination as to [Dr. Friedlander's] claims for compensatory damages has yet been issued by the Agency, the Agency shall complete its review of [Dr. Friedlander's] proof of compensatory damages within thirty (30) calendar days of the date this decision become final.  Within sixty (60) calendar days of the date this decision becomes final, the agency shall issue its final decision on the amount, if any, of compensatory damages due [Dr. Friedlander] under applicable law.  The agency's determination shall also address the issue of whether [Dr. Friedlander] is entitled to any compensatory damages with respect to Agency Complaint No. 930623.

---

[9] Complaint No. 930623 involved the return of travel vouchers for three months in 1993 and the failure of the Agency to provide monthly performance reviews of Plaintiff during 1993.

(Id. at 75.)

Dr. Friedlander requested the EEOC to reconsider this decision.[10]   The request for reconsideration was denied on March 18, 1999.  (Joint Record, Exhibit 7, Dkt. Entry 16-1, at 80-81.)

On April 7, 1997, while the request for reconsideration was pending before the EEOC, the Agency issued its final decision with respect to the question of proven compensatory damages.[11]   The Agency concluded that Dr. Friedlander had "failed to provide evidence linking any medical conditions to his work environment within the violation period of Complaint Nos. 950206 and 950313; that his claim for future medical costs and earnings was unproven and speculative; and, that the Complainant failed to show harm or losses in relation to the aforementioned two complaints."[12]   Dr. Friedlander appealed the denial of compensatory damages to the EEOC.[13]

_____

[10] The precise grounds for reconsideration do not appear in the record.

[11] The Agency decision denying compensatory damages to Dr. Friedlander with respect to Agency Complaint Nos. 950206 and 950313 has not been included in the record presently before this Court.  As will be explained infra, the April 7, 1997 Agency decision was the subject of a ruling of this Court in an earlier action filed by Dr. Friedlander, and is no longer at issue.

[12] The quote in the text is taken from the Final Agency Decision of April 30, 2004, Joint Record, Exhibit 3, Dkt. Entry 16-1, at 52.

[13] On August 2, 2000, the EEOC affirmed the decision that Plaintiff had not proven that he had sustained any compensatory damages with respect to the matters presented

While the appeal to the EEOC was still pending, but within ninety days of the denial of the request for reconsideration of the January 20, 1997 EEOC decision, Dr. Friedlander commenced an action in this court, captioned <u>Friedlander v. Glickman</u>, No. 3:99-CV-01050 (the "1999 Action").  This lawsuit sought enforcement of the 1995 Resolution Agreement.  Plaintiff contended that the 1995 Resolution Agreement obligated the Agency to consider the issue of proven compensatory damages with respect to the matters covered by Agency Complaint Nos. 950206, 950313, 930406, 930623, and 940324. (Complaint in No. 3: 99-CV-01050, ¶ 18.)  Plaintiff did not claim a breach of the 1994 Resolution Agreement.

On October 27, 2000, Dr. Friedlander filed an Amended Complaint in the 1999 Action.  The purpose of the Amended Complaint was to bring before the Court the fact that the EEOC had issued a final decision on August 2, 2000, affirming the Agency's denial of compensatory damages.  (Amended Complaint, ¶5.)

The EEOC decision of August 2, 2000, included as Exhibit "F" to the Plaintiff's Motion for Summary Judgment filed in the 1999 Action, Dkt. Entry 56 at 142-49, stated that at issue was "the amount of compensatory damages recoverable by complainant as a result of the agency's actions described in the complaints that were open as of April 21, 1995, that is, Complaint No. 950206, filed on February 16, 1995, alleging discrimination

_____

in Agency Complaint Nos. 950206 and 950313.

when complainant was denied advanced compensatory time for a religious observance, and Complaint No. 950313, filed on March 18, 1995, alleging discrimination when, in October 1994, complainant was instructed to grant longer breaks to a GS-9 Inspector."

(Id. at 146.)  In affirming the Agency's decision, the EEOC explained:

> In making his claim for compensatory damages, it is complainant's responsibility to demonstrate that he was harmed as a result of the agency's discriminatory actions, and he must show the extent, nature, and severity of that harm, the duration of that harm, and most significantly, the link or connection of his distress to the agency's unlawful discrimination. At no time does complainant explain the connection of his claims to the events described in the 1995 complaints.  While some of his bills show dates after these events, complainant fails to demonstrate a connection to them. Further, it appears that counseling/therapy services have been rendered to complainant since at least 1992, and complainant has not explained the impact of the events in the 1995 complaints on his condition.  We conclude, therefore, that complainant is not entitled to compensatory damages based on his claims addressed therein.

(Id. at 147.)  Plaintiff challenged this decision in the 1999 Action.

Following completion of substantial discovery in the 1999 Action, both parties moved for summary judgment.  (No. 3:99-CV-01050, Dkt. Entries 51 and 57.)  Oral argument on the motions was conducted on March 25, 2003.  At the conclusion of oral argument, this Court ruled that the Agency had not breached the 1995 Resolution Agreement in determining that Plaintiff failed to prove compensatory damages with respect to Agency Complaint Nos. 950206 and 950313.  In addition, this Court determined that the EEOC had properly found that the matters covered in Agency

Complaint No. 930406 could not be the subject of a claim for compensatory damages because Plaintiff had failed to withdraw the appeal he had pending before the EEOC when the 1995 Resolution Agreement was signed.  This Court also determined, however, that the Agency had breached the 1995 Resolution Agreement with respect to the question of whether Dr. Friedlander had proven compensatory damages for the matters covered by Agency Complaint No. 940324.  Finally, this Court determined that the Agency had breached its obligation to determine whether Agency Complaint No. 930623 was still pending at the time of the 1995 Resolution Agreement, and, if so, whether Plaintiff had proven compensatory damages with respect to the matters covered by that Complaint.  The Agency was "directed to specifically perform that part of the [1995] Resolution Agreement which requires it to determine the amount of proven compensatory damages, if any, attributable to conduct complained of in Agency Complaint No. 940324." (Order of March 26, 2003, No. 3:99-CV-01050, Dkt. Entry 70.)  The Agency was also "directed to address the issue of whether Agency Complaint No. 930623 was still outstanding at the time of the Resolution Agreement of April 21, 1995, and, if so, to determine the amount of proven compensatory damages, if any, attributable to the conduct complained of in Agency Complaint No. 930623."  (Id.)

In decreeing specific performance, this Court emphasized that Plaintiff remained obligated to establish a causal relationship between the acts of discrimination alleged in

15

the agency complaints and the asserted damages, stating:

> It is not enough . . . for Mr. Friedlander to say that was under stress and
> was being treated for stress and depression and, therefore, entitled to
> recover.  He must show that those conditions are causally related to the
> specific matters complained of in the complaints that were still outstanding.

(Transcript of Oral Argument, No. 3:99-CV-0150, included as Exhibit 1of the Joint Record,

at 34.)  This Court also determined that the Agency should make its decision based upon

the materials that had been available to it at the time of its 1997 decision, including the

May, 1996 favorable Department of Labor determination on Dr. Friedlander's workers'

compensation claim.

Judgment was entered in accordance with the ruling on the summary judgment

motions.  Neither party appealed the final judgment entered in the 1999 Action.[14]

On April 30, 2004, the Agency complied with this Court's specific performance

decree by addressing the issues of whether Complaint No. 930623 was outstanding at the

time of the 1995 Settlement Agreement and whether plaintiff had proven compensatory

damages with respect to Complaint No. 940324 and, if applicable, Complaint No. 930623.

(Joint Record, Exhibit 3, Dkt. Entry 16-1, at 50-62.)  Finding that Complaint No. 930623

was outstanding at the time of the 1995 Resolution Agreement, the Agency went on to

determine whether Plaintiff had proven compensatory damages with respect to the

---

[14] Plaintiff's counsel unsuccessfully sought an award of attorneys' fees in the 1999
Action, and appealed that adverse ruling.  He later dismissed his appeal.

matters presented in that complaint.

Complaint No. 930623 concerned the return of travel vouchers for January, February, and March of 1993, and the Agency's failure to provide Plaintiff monthly performance reviews during 1993. (Id. at 57.)  The Agency found that Plaintiff had failed to provide any evidence of a causal relationship between those matters and such items of damages as counseling and psychiatric care, lost wages, and emotional distress.

The Agency reached an identical conclusion with respect to the issues presented in Complaint No. 940324.  Specifically, it found that there was no evidence that negative comments in plant reviews in December of 1993 or the investigation as to the falsification of reports concerning ante-mortem inspections of two cows caused him any pecuniary loss or compensable emotional harm.

Plaintiff brought this action on July 27, 2004.   He now asserts that the Agency has breached both the 1994 and the 1995 Resolution Agreements.  As noted at the outset of this Opinion, the parties agreed to submit this case to the Court on a stipulated record. Oral argument was conducted on August 30, 2005, and the matter is ripe for decision.

## II.  DISCUSSION

While there is a convoluted history to this protracted controversy, the issue before this Court is fairly straightforward: did the agency breach its contractual obligations to Dr. Friedlander in determining that he was not entitled to an award of compensatory for the

17

matters charged in Complaint Nos. 930623 and 940324.  In addressing this issue, no deference has been accorded the Agency's determination.  Instead, it is for this Court to determine, based upon a *de novo* review of the record and a plenary consideration of the parties' contentions, whether the Agency breached its contractual duties.  See Saksenasingh v. Secretary of Education, 126 F.3d 347, 350 (D.C. Cir. 1997).

### A.  The 1994 Resolution Agreement

Plaintiff contends that the Agency breached the 1994 Resolution Agreement. According to Plaintiff, the Agency essentially "bound itself to pay compensatory damages for Complaint No. 940324 when it agreed not to contest the same."  (Plaintiff's Brief in Support of Judgment, Dkt. Entry 14, at 7.)  Plaintiff further argues that the 1994 Resolution Agreement effectively committed the Agency to pay "the statutory maximum [of $300,000] with regards to Complaint No. 940324." (Id. at 10.)  The Agency responds by asserting that, because Plaintiff had not asserted a breach of the 1994 Resolution Agreement in the 1999 Action, he may not now  present a claim for breach of that agreement.  (Brief of Defendant for Judgment, Dkt. Entry 18, at 4-5.)  Alternatively, the Agency argues that it did not breach the 1994 Resolution Agreement.  (Id. at 5-6.)

It is highly doubtful that Plaintiff can now litigate the question of whether there was a breach of the 1994 Resolution Agreement. In the administrative processes, Plaintiff only challenged the Agency's compliance with the 1995 Resolution Agreement.  There thus

may be an insurmountable exhaustion of administrative remedies hurdle pertaining to the claim that the Agency breached the 1994 Resolution Agreement.  See Micheli v. Director, Office of Workers' Compensation Programs, 846 F.2d 632, 635 (10th Cir. 1988)("'In the absence of exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative proceeding at the appropriate time.'").

Even assuming that the question of whether the Agency breached the 1994 Resolution Agreement is properly before this Court, Plaintiff is not entitled to relief. Plaintiff's argument rests on that provision of the 1994 Resolution Agreement which obligated the Agency to "[n]ot contest the claim material submitted by Dr. Friedlander for compensatory damages."  Plaintiff asserts that this means that he did not have to establish a causal relationship between the discrete matters presented in Complaint No. 940324 and his purported compensable harm; all he had to do is present a claim for damages and the Agency had to pay the claim.  He insists that this means that the Agency had to pay the maximum amount payable under 42 U.S.C. § 1981a(b)(3)(D), $300,000.

Plaintiff's argument ignores the established principle of contract law that a court must consider the entirety of a contract in ascertaining the parties' mutual intentions.  See

19

Restatement (Second) of Contracts § 202(2).[15]  In this regard, "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."  Restatement (Second) of Contracts § 203(a).

The 1994 Resolution Agreement required the Agency to "make a lump sum payment in the amount of $2500 to Dr. Friedlander for compensatory damages incurred during the period October 1, 1993, to August 4, 1994."  (Joint Record, Exhibit 5, Dkt. Entry 16-1, at 67.)  The Agency could do so, however, only with the approval of the Comptroller General, and Dr. Friedlander was required to provide, within thirty days from signing the agreement, claim material "for submission to the Comptroller General."  (Id. at 68.)[16]  Thus, the obligation of the Agency to "[n]ot contest the claim material submitted by Dr. Friedlander for compensatory damages" must be viewed in the context of the parties' chosen contractual terms, which included:

- Payment of $2,500 for compensatory damages

- Approval of payment of compensatory damages in the amount of $2,500 by the Comptroller General.

_____

[15] "It is customary, where Congress has not adopted a different standard, to apply to the construction of government contracts the principles of general contract law."  Priebe & Sons, Inc. v. United States, 332 U.S. 407, 411 (1947).

[16] The record before this Court does not include the claim material that Plaintiff submitted in connection with the 1994 Resolution Agreement.

- Plaintiff's submission of claim material to the Comptroller General to secure the requisite approval.

- No challenge to that material by the Agency.

The Agency's agreement was plainly limited to paying compensatory damages of $2,500 and to not take action that could result in disapproval of the payment by the Comptroller General.  This is the only reasonably plausible interpretation of the 1994 Resolution Agreement.

Contrary to the assertion presented in this case, the Agency did not agree to pay whatever damages Dr. Friedlander claimed as compensatory harm for the matters presented in Agency Complaint No. 940324.  The Agency agreed to pay only $2,500, so long as the Comptroller General found that the claim material submitted by Dr. Friedlander supported a finding of compensable harm in that amount.  This conclusion is buttressed by the fact that the complaint could be reinstated if the Comptroller General did not approve the payment of the compensatory damage claim.[17]

Also supporting the conclusion that the Resolution Agreement was not a blank check for Dr. Friedlander is the fact that he did not present this argument until more than

---

[17] Plaintiff has not presented any evidence that the Comptroller General approved payment of a claim in excess of $2,500.  Nor has he presented any evidence that he submitted claim material to the Comptroller General that would support an award of damages in excess of $2,500.

ten years after the Resolution Agreement had been executed.  It is undisputed that the

Agency paid the sum of $2,500 to Dr. Friedlander in August of 2005, and he did not

complain at that time that he was entitled to additional amounts under the 1994

Resolution Agreement.  Although in May of 1996 he specifically asked the EEOC to

determine whether the Agency breached the 1995 Resolution Agreement, he did not

present a breach of contract claim to the EEOC with respect to the 1994 Resolution

Agreement.  Moreover, it would be unreasonable to conclude that the Agency had to

obtain Comptroller General approval to pay $2,500 for compensatory damages, but did

not require such approval for payment of hundreds of thousands of dollars in

compensatory damages allegedly attributable to the matters raised in Agency Complaint

No. 940324.

      In summary, when read in its entirety, the 1994 Resolution Agreement plainly

manifested the parties' intention to settle the matters presented in Agency Complaint No.

940324 with the payment of compensatory damages of $2,500, as well as the other relief

expressed therein.  There is no basis for finding that the 1994 Resolution Agreement

obligated the Agency to pay Plaintiff the statutory maximum amount of damages.

      B.  **The 1995 Resolution Agreement**

      The 1995 Resolution Agreement obligated the Agency "to pay proven

compensatory damages in support of all formal complaints that exist as of the date of the

signing of this agreement."  The Agency has determined that Complaint No. 930623 was

still open in April of 1995.  In ruling on the summary judgment motions in the 1999 Action,

this Court determined, based on the record before it at that time, that Complaint No.

940324, although subject to the 1994 Resolution Agreement, was still pending at the time

of the execution of the 1995 Resolution Agreement, thereby affording the Plaintiff an

opportunity to prove compensatory damages attributable to the matters in that

complaint.[18]

In addressing the question of whether Plaintiff had shown compensatory losses,

the Agency applied the following principles:

Compensatory damages may be awarded for past pecuniary losses, future

---

[18] Upon further reflection, it appears that the 1995 Resolution Agreement did not
encompass Complaint No.940324.  After all, that complaint had been the subject of the
1994 Resolution Agreement, and it is now clear that the Agency complied with its
contractual obligations under the 1994 Resolution Agreement.  That document specified
that it constituted a "full, complete and final settlement of all the employment concerns
currently raised in [Complaint No. 940324]," and there does not appear to be any reason
for allowing Plaintiff to present any additional claim with respect to the matters in that
complaint.  Confusion as to the status of Complaint 940324 is attributable to the fact that
the EEOC, in its January 29, 2007 decision, ordered the Agency to "implement the
compensatory damages provisions of the settlement agreements dated August 4, 1994,
and April 21, 1995, regarding Agency Complaint Nos. 940324, 950206 and 950313."
(Joint Record, Exhibit 6, Dkt. Entry 16-1, at 75.)  It now appears that the Agency had
satisfied the compensatory damage provision of the 1994 Resolution Agreement at the
time that the EEOC issued its January 27, 1997 Order.  As noted above, the Agency had
not commented on the appeal that was the subject of the EEOC ruling of January 27,
1997, and there is no indication that the EEOC was aware that the compensatory damage
part of the 1994 Resolution Agreement had been satisfied in August of 1995.

pecuniary losses and non-pecuniary losses which are directly and proximately caused by an agency's discriminatory conduct.  Pecuniary losses are out-of-pocket expenses incurred as a result of an employer's unlawful action . . . .   Non-pecuniary losses are losses that are not subject to precise quantification, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character or reputation, injury to credit standing, and loss of health.

\* \* \*

The burden of proving compensable damages rests with the complainant. The complainant must 'establish a connection between the alleged discriminatory action and the resulting injury.  In determining damages, the agency is only responsible for those damages that are clearly shown to be caused by the alleged discriminatory conduct, not for any and all damages in general.'  It is a complainant's responsibility to demonstrate that he was harmed as a result of an agency's discriminatory actions, and he must show the extent, nature, and severity of that harm, the duration of that harm, and, most significantly, the link or connection of his distress to the agency's unlawful discrimination.

(Final Agency Decision of April 30, 2007, Joint Record, Exhibit 3, Dkt. Entry 16-1, at 56.)

Plaintiff does not contend that the Agency erred in identifying the principles governing an award of compensatory damages. Instead, Plaintiff complains about the Agency's application of the well-settled causation rules.  Specifically, Plaintiff argues that the award of workers' compensation benefits and Dr. Latimer's report of June 30, 1995 compel a conclusion that compensatory damages have been proven.[19]

--------------------

[19] Plaintiff makes this argument only with respect to the question of proven compensatory damages for Complaint No. 930623.  As noted above, it is Plaintiff's position that he need not prove causation in order to recover the maximum amount of compensatory damages payable in connection with Complaint No. 940324.  Significantly, Plaintiff makes no argument that he actually proved a causal relation between some

The fatal flaw in Plaintiff's argument is that he makes no effort to connect the matters about which he complained in Complaint Nos. 930623 and/or 940324 with his assertion that he suffered extreme emotional distress while working for the Agency.  The 1995 Resolution Agreement did not obligate the Agency to pay compensatory damages for matters not covered by specific discrimination charges.  Rather, the Agency agreed "to pay proven compensatory damages in support of all formal complaints that exist as of the date of the signing of this agreement."  (Joint Record, Exhibit 4, Dkt. Entry 16-1, at 64.)

Complaint No. 930623 involved the return of travel vouchers for three months in 1993 and the failure of the Agency to provide monthly performance reviews during 1993. Plaintiff has not shown how he was harmed by these discrete matters.  He has presented no evidence, for example, that the absence of performance reviews resulted in his inability to obtain a salary increase.  He does not point to any evidence in the record that shows some connection between any compensable harm and these particular matters. While he did present evidence that he was undergoing counseling at the time and suffering health problems, that evidence is linked to the stress imposed on him while working at the Taylor Packing Company and his transfer from that assignment in 1992. As the Agency observed, "[a]bsent from the personal narrative submitted by the Complainant, the statement of his family and former fiancé, and his psychiatrist's report

_____

element of compensable harm and the matters presented in Complaint No. 940324.

are any facts or opinion which link the travel vouchers or the failure to provide the

Complainant monthly [performance] reviews with the health problems he has

experienced." (Joint Record, Exhibit 3, Dkt. Entry 16-1, at 56.)  Under these

circumstances, the Agency did not breach the 1995 Resolution Agreement in refusing to

pay any compensatory damages with respect to the matters presented in Complaint No.

930623.

As noted above, Plaintiff's entire argument with respect to Complaint No. 940324

is premised upon the assertion that the 1994 Resolution Agreement relieved him of

proving causation, and obligated the Agency to pay the statutory maximum allowable.

Nonetheless, the Agency did address the question of whether Plaintiff proved

compensatory damages with respect to the matters presented in Complaint No. 940324:

negative comments in plant reviews in December of 1993; an investigation conducted

from September 1993 through February 1994 concerning ante-mortem inspections of two

cows; discussions with plant personnel about the investigation; and related proposed

disciplinary action.  The Agency found no evidence of any causal relationship between

any of the elements of alleged harm and the matters covered by Complaint No. 940324,

explaining:

> [T]he weight of the evidence indicates . . . that the Complainant suffered
> mental and emotional problems because he worked long hours, lacked
> adequate staff, and perceived himself as undervalued in the workplace.
> The documentary evidence pertaining to costs incurred by the Complainant

does not explain the date of the services rendered and the connection, if any, to the issues in the relevant complaints.  Nor does the Complainant's evidence link his loss of overtime pay to the aforementioned issues.  We conclude that the Complainant's evidence does not demonstrate that his mental and emotional problems or loss of pay were related to negative plant reviews or any aspects of the investigation pertaining to whether a required ante-mortem was performed.

(Joint Record, Exhibit 3, Dkt. Entry 16-1, at 58.)

An independent review of the record does not uncover any evidence undermining the Agency's conclusion.  While it is undeniable that Plaintiff suffered extreme emotional distress, there is no evidence that the distress was attributable, in whole or in part, to the matters presented in Complaint No. 940324.  For instance, there is no evidence of any time Plaintiff may have missed from work while the investigation pertaining to ante-mortem inspections was undertaken.  Such evidence would have been relevant to a claim of emotional distress caused by such an investigation.  There is no evidence of treatment occurring during this time.  There is only Plaintiff's very general statement of emotional distress brought on by his employment.

The Agency was obligated to pay only those compensatory damages attributable to the matters presented in Complaint No. 940324.  Plaintiff failed to provide proof of precise harm attributable to discrete conduct.  Instead, he pursued an approach that presumed an entitlement to damages based upon general evidence of pecuniary and non-pecuniary losses.  Having failed to prove that the matters presented in Complaint No.

940324 caused any harm, Plaintiff cannot establish that the Agency's decision denying

compensatory damages breached the 1995 Resolution Agreement.

## III. CONCLUSION

The 1994 Resolution Agreement obligated the Agency to pay Plaintiff $2,500 in

"compensatory damages," subject to approval of the Comptroller General.  There is no

dispute that Plaintiff was paid this amount.  Therefore, the Agency did not breach the

1994 Resolution Agreement.

In the 1999 Action, this Court directed specific performance of the 1995 Resolution

Agreement to the extent that the Agency was obligated to determine whether Plaintiff had

proven "compensatory damages" arising out of the matters he had asserted as

discriminatory treatment in Agency Complaint Nos. 930623 and 940324.  The Agency

complied with the specific performance decree.  The Agency did not breach its contract

with Plaintiff by refusing to pay any damages because neither the materials Plaintiff had

submitted to the Agency nor the 1996 award of workers' compensation benefits

established a causal relationship between his asserted damages and the acts about

which he complained in the two discrimination charges.

This dispute has had a long and tortuous history.  Undoubtedly, Plaintiff suffered

emotional distress while working for the Agency, and this distress became severe.  It is

also clear that the stress and emotional reaction centered on the time that he was at the

Taylor Packing plant and his transfer from that facility in 1992.  There simply was no evidence, however, that the handling of travel vouchers, absence of performance reviews, an investigation concerning ante-mortem inspections on two cows, and comments pertaining to that investigation caused Plaintiff any particular harm.  Any determination of an amount of "compensatory damages" would have been speculative.  That is not to say that appropriate proof of causation could not have been presented.  Plaintiff, however, made no effort to do so.  Instead, he sought recovery for all the distress he experienced while working for the Agency, regardless of the cause.  The 1995 Resolution Agreement did not obligate the Agency to pay compensatory damages attributable to some hostile working environment.  It was obligated to pay only those damages caused by the matters presented in specific charges of discrimination.  Because Plaintiff did not prove that the precise charges caused any compensable harm, the Agency properly decided to make no payment.

Accordingly, Judgment will be entered in favor of Defendant.  An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LESTER FRIEDLANDER** | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:CV-04-1649** |
| | : | **(CHIEF JUDGE VANASKIE** |
| **ANN VENEMAN, Secretary, U.S.** | : | |
| **Department of Agriculture** | : | |
| **Defendant** | : | |
| | : | |

---

## ORDER

    **NOW, THIS 13th DAY OF APRIL, 2007,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT** the Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff.  The Clerk of Court is further directed to mark this matter **CLOSED.**

 

                                     **s/ Thomas I. Vanaskie**
                                     Thomas I. Vanaskie
                                     United States District Judge